**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID W. BUCK, | ) | CASE NO: 1:05 CV 00871 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| DR. HARWOOD, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |

On October 9, 2006, Defendants Dr. Jeffrey A. Harwood ("Dr. Harwood") and the Huron County Jail Medical Department ("Huron County Sheriff"), collectively referred to as "Defendants," filed a Motion for Summary Judgment. (Doc. No. 31.) Plaintiff David W. Buck ("Buck") failed to file a brief opposing Defendants' motion. Plaintiff, acting *pro se*, did file a Notice of Address Change with the Court on November 13, 2006. (Doc. No. 37.) In the interest of justice, the Court extended Buck's deadline for responding to Defendants' motion. As of this date, Buck still has not filed a response. For the reasons explained below, Dr. Harwood's and Huron County's Motion for Summary Judgment is GRANTED.

### I. PROCEDURAL HISTORY

Plaintiff David W. Buck ("Buck") filed his Complaint against Defendants Dr. Harwood and Huron County Jail Medical Department (collectively "Defendants") on April 1, 2005 using a

Prisoner Civil Rights Complaint form. (Doc. No. 1.) Buck alleges that on January 8, 2005, while incarcerated in the Huron County Jail, he filled out a medical request form asking to see a doctor concerning his right ankle, which has a metal rod and seven screws in it. Buck further alleges that Dr. Harwood would not see him, nor was he examined by any other physician. Buck alleges that Dr. Harwood's only response to his request was a note stating that "forunatly [sic] you don't have to walk far in here." (Doc. No. 1.) The Huron County Sheriff filed his Answer on September 15, 2005 (Doc. No. 14), while Dr. Harwood filed his Answer on July 19, 2006. (Doc. No. 26.)

## II. SUMMARY OF FACTS

**A.     Time Frame of Incarceration**

Prior to his incarceration in Huron County Jail, Buck had been held at penal institutions in Pennsylvania from September 18, 2002 until March 22, 2004. (Seiber Aff. at ¶4, *citing* Composite Ex. A at D00058.)

Buck was arrested in Ohio on December 21, 2004 and booked at the Huron County Jail on the same date. (Valentine Aff. at ¶3.) Buck remained at the Huron County Jail until June 26, 2005. (Valentine Aff. at ¶3.) Due an apparent violation of the terms of his Pennsylvania parole, Buck was released to Pennsylvania authorities on June 27, 2005 for transfer to a Pennsylvania penal facility. (Valentine Aff. at ¶3.)

B.   **Medical Records**[1]

1.   **Medical Records from Incarceration in Pennsylvania, September 2002 through March 2004**

On September 18, 2002, Buck informed staff at the Pennsylvania Institution that he had fractured his right ankle around 1999 and had an open reduction internal fixation ("ORIF"), that included the insertion of screws and a metal plate into his right ankle. (Seiber Aff. at ¶5, Composite Ex. A at D00057-D00058, D00070-D00071.)  In a Transfer Health Information form, Buck reported no physical disabilities or limitations and no use of assistive devices. *Id*. at D00057.  However, on the same date, Buck filled out an Initial Reception Screening form wherein he indicated that he used crutches or a cane, but that these items were "not with" him. (Composite Ex. A at D00060.)

During a September 25, 2002 screening, Buck stated that he had chronic pain in his right ankle, but denied any medication usage or the presence of physical disabilities and/or limitations. *Id*. at D00070.

After Buck slipped of a ladder while trying to reach the top bunk, he was prescribed the use of a cane for an "indefinite period." (Seiber Aff. at ¶7, Composite Ex. A at D00083 and D00163.)

At the time of Buck's release on March 15, 2004, the Pennsylvania institution noted that Buck did not require any health-sustaining medication. (Seiber Aff. at ¶8, Composite Ex. A at Doc. No. D00126.)

---

[1] Buck and Defendants have stipulated that documents bates stamped D00050 through D00216 are authentic and comprise a complete set of Buck's medical records stemming from his incarceration in Pennsylvania penal institutions. (Doc. No. 30.)

### 2. Medical Treatment at the Huron County Jail

In accord with Huron County Jail procedures, Buck received an initial screening the day after his arrest on December 22, 2004. (Valentine Aff. at ¶4, Doc. No. 36; D00005 through D00007, Doc. No. 33.) Buck denied that he was taking medication and denied having any medical problems. *Id*.

On January 1, 2005, a jail nurse, Rebecca Brewer, LPN, took Buck's medical history. (*See* D00048, Doc. No. 33.) Buck said that he had a Vitamin B deficiency for which he was taking multivitamins and was on a high calorie and high protein diet. *Id*. The medical history does not mention any problems concerning Buck's right ankle. *Id*. Nurse Brewer also completed a follow-up evaluation form that indicated Buck broke his right ankle in 2000 and "has rods & screws." *Id*. at D00049. The follow-up form indicated that Buck had "no medical issues or needs [at] this time." (*See* D00049, Doc. No. 33.)

Buck made several requests to see a doctor during his incarceration. (*See* D00018 and D00019.) On January 8, 2005, Buck completed a Medical Inmate Request form in which he stated the following:

> I would like to see the doctor concerning my right ankle. I have 7 screws and a metal plate in it. Also I should be using a cane. I'm in some discomfort. I would like to go to the hospital to see if my screws are broke and so I can get some type of cane.

*Id*. at D00019. The jail's medical director, Defendant Dr. Harwood, responded as follows: "Sorry, no canes. Fortunately you don't have to walk very far in here." *Id*. In his affidavit, Dr. Harwood stated that he understood that security concerns prohibited canes in the jail. (Harwood Aff. at ¶8.) Dr. Harwood further averred that his statement expressed his belief that Buck only

needed to walk from his cell to an adjacent day room and was not intended to belittle Buck's condition. *Id*.

Dr. Harwood believed that Buck's pain was chronic rather than acute and did not medically warrant transporting Buck to a hospital for x-rays. *Id*. at ¶12.

The Huron County Sheriff admits that Dr. Harwood did not see Buck in response to his January 8, 2005 medical request, but avers that Dr. Harwood saw Buck on one or more occasions and that the jail nurse also saw Buck on numerous occasions. (Huron County's Answer at ¶4; Answer of Dr. Harwood at ¶4.) Buck made several other requests during his incarceration that were granted, including a request that he be allowed to shift bunks, a request for Tagamet to treat heartburn, and a request to see Dr. Harwood to address a respiratory ailment. (*See* D000012-D00019, D00030, Doc. No. 33.)

### 3. Medical Records from Pennsylvania Institution *After* Buck's Stay in Huron County Jail

Upon arrival at a Pennsylvania correctional institution, Buck underwent an initial health screening on June 27, 2005. (Seiber Aff. at ¶9, Composite Ex. A at D00128.) Under the category "physical aids," there was no indication that Buck required a cane or other assistive device. *Id*. at D00129. Further under the heading "special health requirements," the form states that Buck required "bottom-bunk" status but that stairs were "OK." *Id*. at D00128.

On September 22, 2005, Buck was referred to a radiologist for an x-ray of his right ankle, after complaining of stiffness and pain. (Harwood Aff. ¶13, Ex. A at D00154 and D00155.) The x-ray report completed by Sonja Schaffer, M.D. stated as follows: "There are post-op[erative] changes with a fixating plate and screws along the right lateral malleolus. The

ankle mortise is normal.  The overlying soft tissues are normal.  There is minimal spurring along the posterior aspect of the distal right tibia." *Id*.  Overall, Dr. Schaffer found the x-ray results were "Not Clinically Significant." *Id*.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may rely on depositions, answers to interrogatories, and the like, to demonstrate that the non-moving party has no evidence to prove his case and hence that there can be no factual dispute. *Id.* at 328 (White, J., concurring).  However, "it is not enough to move for summary judgment ... with a conclusory assertion that the [non-moving party] has no evidence to prove his case." *Id.*

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) *citing In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).  The lack of such a response by the

nonmoving party may result in an automatic grant of summary judgment. *See Reeves v. Fox Television Network*, 983 F. Supp. 703, 709 (N.D. Ohio 1997).

In assessing the merits of the motion, a Court should "draw all reasonable inferences in favor of the nonmoving party." *Joostberns v. United Parcel Servs., Inc.*, 2006 U.S. App. LEXIS 533 at *8 (6th Cir. 2006). In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986).

### IV.  ANALYSIS

**A.  Cause of Action Against the Huron County Jail.**

The Huron County Sheriff, in his official capacity, answered in the name of Huron County Jail Medical Department. Pursuant to the Ohio Revised Code § 341.01, "[t]he sheriff shall have charge of the county jail and all persons confined therein." Defendant Huron County Sheriff argues that he is entitled to summary judgment because Buck has not alleged any facts that could establish liability. (Defendants' Mot. at 8.)

To prove a claim under 42 U.S.C. § 1983, Buck must establish: (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). As Buck filed suit against the Huron County Jail Medical Department rather than the Huron County Sheriff who answered the Complaint, it is clear that any action against the Huron County Sheriff is brought against him in his official

capacity and not in his individual capacity.  The Complaint itself fails to indicate that the Huron County Sheriff is being sued in his individual capacity.  Generally, a plaintiff must designate in which capacity the defendant is being sued; if the complaint does not do so, by operation of law, the defendant is deemed sued in his official capacity.  *See Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992).

Buck makes no allegation as to whether the Huron County Sheriff was acting as a state official or a local government official with respect to his administration of the Huron County jail.  If the Huron County Sheriff was acting as a state official, he would be entitled to immunity under the Eleventh Amendment.[2]  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (U.S. 1989), *citing Brandon v. Holt*, 469 U.S. 464, 471 (1985).  If the Huron County Sheriff was acting as a local government official, he could be liable in his official capacity under some circumstances, as the protection of the Eleventh Amendment "does not extend to counties and similar municipalities."  *Gottfried v. Medical Planning Servs.*, 280 F.3d 684, 692 (6th Cir. 2002) *quoting Mt Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

However, as the doctrine of *respondeat superior* does not apply to § 1983 actions, Buck must demonstrate that the alleged violation resulted from the official custom, policy, or practice of Huron County or its sheriff in his official capacity.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Buck, as the plaintiff, must demonstrate that there was a direct causal link between a local governmental policy or custom and the alleged constitutional

---

[2] Although it is unnecessary to the resolution of this motion to address whether the Huron County Sheriff was acting as a state official, it bears noting that Ohio R.C. § 341.01 *et seq.* charges county sheriffs with the operation of county jails and prescribes rules for their operation.

deprivation. *See id.*; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To survive summary judgment a plaintiff must (1) identify the policy; (2) connect the policy to the local governmental entity; and (3) demonstrate that the particular injury was incurred because of the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993).

In the instant action, Buck does not identify any policy or custom that resulted in the violation of his constitutional rights, much less connect that policy to Huron County or the Huron County Sheriff. Instead, Buck merely alleges that he was treated poorly and neglected by the medical personnel at the jail. This does not suffice under *Garner*. Therefore, summary judgment should be granted in favor of the Huron County Sheriff. "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The local government's policy or custom "must be the moving force of the constitutional violation in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). Further, "proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The bare allegations set forth in the Complaint do not allege that Defendant Huron County Sheriff instituted a policy or custom that violated Buck's constitutional rights. In addition, Buck has failed to respond to Defendants' motion and has not pointed to any facts in the record that support his claim against the Huron County Sheriff. As such, Defendants' motion is GRANTED with respect to Buck's claims against the "Huron County Jail Medical Department."

**B.      Failure to Provide Medical Care as a Violation of 42 U.S.C. § 1983**.

Dr. Harwood asserts that he is entitled to summary judgment in his favor because he was unaware of any facts from which he could have inferred that there was a substantial risk of serious harm to Buck.

The United States Supreme Court has held that, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment ... [regardless of] whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-105 (U.S. 1976). According to the Sixth Circuit, "[p]rison officials violate the Eighth Amendment (which applies to persons who have been convicted) and the Due Process Clause of the Fourteenth Amendment (which applies to pre-trial detainees) when they are deliberately indifferent to a substantial risk of serious harm to an inmate." *Townsend v. City of Morehead*, No. 99-5575, 2000 WL 282475, at **2 (6th Cir. March 9, 2000).

Nevertheless, prison officials cannot be found liable for denying an inmate humane conditions of confinement unless: (1) the official knows of and disregards an excessive risk to inmate health or safety; (2) the official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and (3) the official must draw the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). According to the Sixth Circuit, "under *Farmer*, such a claim has both an objective and a subjective component [and] [t]he objective component requires the existence of a 'sufficiently serious' medical need." *Estate of Harbin v. City of Detroit*, 2005 U.S. App. LEXIS 19149, *12-13 (6th Cir. 2005) (citations omitted). The objective component of deliberate indifference requires Buck to demonstrate that the alleged

deprivation was sufficiently serious, thereby posing a substantial risk of serious harm. *See, e.g. Garretson v. City of Madison Heights*, 407 F.3d 789, 796-97 (6th Cir. 2005) ("An incarcerated plaintiff who complains that a delay in medical treatment violates her constitutional rights must present 'verifying medical evidence' to establish the detrimental effect of the delay."); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001); *Gaudreault v. Salem*, 923 F.2d 203, 208-209 (1st Cir. 1990) ("the 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment").

The record shows that on September 22, 2005, over nine months after Buck made his medical request, Buck's right ankle was x-rayed. The examining physician, Dr. Schaffer found that the ankle mortise was normal, the overlying soft tissues were normal, there was minimal spurring along the posterior aspect of the right tibia, and that the x-ray as a whole was not clinically significant. (Doc. No. 34, Ex. A, D00155.) Thus, there was no basis for Buck's belief that the screws in his ankle were "broke." (*See* D00019.) Buck has not presented any verifying evidence to establish that his ankle condition was serious and posed a substantial risk of serious harm to his health. To the contrary, the x-ray impression confirms Dr. Harwood's diagnosis that Buck suffered from a chronic condition and that Buck's ankle injury/pain did not constitute an excessive risk to Buck's health or safety. As a result, Buck's claim cannot withstand the objective component of this test. Thus, Buck's claim that his Eighth Amendment right was violated because Dr. Harwood deliberately ignored a serious medical injury or condition is untenable. The inadequacy of Buck's claim is made even more apparent by the fact that there is nothing in the record to suggest that his injuries were exacerbated by a delay in providing treatment.

Therefore, summary judgment is granted in favor of Dr. Harwood with respect to Buck's claim that his constitutional rights were violated by either a failure or delay in the provision of medical care.

## V.  CONCLUSION

For the foregoing reasons, Dr. Harwood's and the Huron County Sheriff's Motion For Summary Judgment is GRANTED.

IT IS SO ORDERED.

>	s/ *Nancy A. Vecchiarelli*
>	NANCY A. VECCHIARELLI
>	U.S. MAGISTRATE JUDGE

Date:  February 22, 2007